The appeal is from the ruling of the receiver, that labor claims are entitled to priority of payment over mechanics' lien claims. *Page 427 
The only assets of the defendant company were six unfinished houses, subject to inchoate mechanics' liens, which the receiver sold free of liens, the proceeds of which are about to be distributed.
By the eighty-third and eighty-fourth sections of the Corporation act, laborers and workmen have a first and prior lien for wages earned within two months next preceding proceedings in insolvency, prior to all other liens that can or may be acquired upon the corporate assets, except real estate mortgages or mortgages on chattels recorded more than two months before, and those recorded within two months of insolvency proceedings, given for money loaned or goods purchased within two months. The lien for wages comes into being upon the institution of insolvency proceedings. Hinkle v. Camden Safe Deposit and Trust Co.,47 N.J. Eq. 333.
The position taken by the mechanics' lien claimants is that, inasmuch as their liens, under the Mechanics' Lien act, relate to the commencement of the buildings, and as the title to the six incompleted houses vested in the receiver burdened with their liens, only the "equity" passed to the receiver to be administered as assets, and that upon this alone wages is a lien. The answer to this is, that by the appointment of the receiver the properties passed into custodia legis as assets for this court to administer, to liquidate, and its jurisdiction became exclusive. All other means to recover debts and liens, including mechanics' liens, were suspended. Demott v. Stockton PaperWare Manufacturing Co., 32 N.J. Eq. 124. Demonstrably, the properties in custodia legis were assets to be administered, primarily, for the lienholders in the order of their priority, and for the other and less fortunate creditors of the defunct corporation.
The fact that the receiver's funds were realized from the sale of the properties free and clear of mechanics' liens, under section 81 of the Corporation act, is an incident without moment. The power of sale of property in cutsodia legis free and clear of liens, justifiable in the suit in which it was taken, is inherent in the court. Section 81 applies to liens, the legality of which may be elsewhere litigated. *Page 428 
Now as to the priorities. Both sets of liens are creatures of legislative favor; each privileged class is supreme and independent of the other within its statutory field, but in conflict, when property, subject to mechanics' liens, becomes an asset in the hands of a receiver, the legislative preference for the wage claims is expressed in no uncertain terms, that they shall have priority to the exclusion of all others, except three types of recorded liens. Upon such an event, mechanics' lien claimants, it is true, suffer disappointment in the subordination of their privilege, but as recipients of favors, they cannot be critics of legislative manners in distributing them.
Vice-Chancellor Emery, back in 1896, in Fitzgerald v. MaximPowder Manufacturing Co., 33 Atl. Rep. 1064 (not officially reported), settled the point now raised. In an elaborate opinion construing sections 83 and 84 of the Corporation act he held that "assets" as there used does not mean property remaining after existing liens thereon, accruing prior to insolvency, as it had been held to mean in earlier decisions before the sections were enacted in 1892 (Hinkle v. Camden Safe Deposit and Trust Co.,supra; Wright v. Wynockie Iron Works, 48 N.J. Eq. 29), but property which comes to the receiver to be administered, without reference to liens, and that wage claims were entitled to priority, in the distribution of assets, over a judgment and execution creditor of the corporation who had made a levy upon the lands of the corporation, the proceeds of the sale of which was in court before the filing of the bill.
The order in which the legislature bestowed the privileges cannot influence the defined order of enjoyment of the favors. Counsel for mechanics' lien claimants who advance the doctrine of latest expression of legislative intent, would experience difficulty in maintaining that it does not prevail of the advantage of the wage claimants. The Mechanics' Lien act, in its present form, in respect of the lien, was enacted in 1853. P.L.p. 437. Sections 83 and 84 of the Corporation act came into existence in 1892. P.L. p. 426. Both acts have been repealed and re-enacted in substantially the same language in later revisions. "A law which, by a revision *Page 429 
is repealed and at the same time thereby re-enacted does not, for a moment, lose its binding force" (Randolph v. Larned, 27 N.J. Eq. 557
), and it may appropriately be added, "nor continuity of intention." The Corporation act is the latest original expression. The receiver's ruling is affirmed.
The exception of Louis Sederis, to the receiver's calculation of the amount due on his mechanics' lien claim is overruled.
The receiver and counsel each ask $2,000 for their services out of a net estate of $5,621.85 for distribution. The properties were sold as free of mortgages and free of mechanics' liens. The gross receipts from the sale were $16,207.01, out of which, approximately, $10,000 was applied to the payment of prior undisputed mortgages. The gross receipts in excess of the net receipts were not administration assets. The receiver is a lawyer, and skilled in this branch of work. He did not need counsel in the administrative work, although counsel was assigned to him. There was some complication in marshalling the proceeds of the sale of the six houses, but nothing serious, needing counsel's advice. There was no litigation except Mrs. Herman's foreclosure suit of a mortgage given for the purchase money of the land on which the six houses stand. That was adjusted in the marshalling of the proceeds of sale, except as to $500, which is still in litigation. The receiver could encounter no embarrassment in defending this suit. He did not require counsel. The receiver and counsel co-operated with the attorney of the corporation in resisting and defeating an involuntary petition in bankruptcy. Their aid was volunteered and cannot be taken into consideration in making the allowance. The receiver and counsel worked together and though the work was well done, I cannot allow separate compensation for combined services. Together they will be allowed $1,500 to be "split" as they shall agree. The receiver will also be allowed his actual taxed costs.
The solicitor of the complainant will be allowed $100 and his actual taxed costs.
The accountant will be allowed $50. *Page 430 
The receiver asks to be advised whether to compromise Mrs. Herman's foreclosure suit. The receiver must use his own judgment. If the receiver has reasonable grounds for contesting it, a settlement of a $500 claim for $450 is a discount, not a compromise; he should litigate. If the receiver despairs of a successful outcome, the abatement is an unworthy peace price.
The receiver also asks to be told whether to prosecute a claim for deficiency against one Halligan, now financially defunct. Answer: No. *Page 431