MARGARET SMITH *vs.* EASTERN RAILROAD COMPANY & trustee.

Suffolk.    Nov. 19, 1877. — March 1, 1878.    ENDICOTT & LORD, JJ , did not sit.

The income of the Eastern Railroad Company, earned after the mortgage, authorized by the St. of 1876, c. 236, took effect, may, so long as the company remains in the use and management of its property, be attached by trustee process, to secure a claim accruing since that date, for negligently injuring the property of the plaintiff at a highway crossing, such claim being " operating expenses," within the meaning of those words in the statute.

TORT for damage done to the property of the plaintiff on September 19, 1876, by a locomotive engine of the defendant corporation, at a place where a highway crossed the defendant's road. Writ dated December 19, 1876. The Merchants' National Bank of Boston, summoned as trustee, answered, admitting that, at the time of service upon it, "there was deposited in said bank, in the name of the Eastern Railroad Company, the sum of $2,541.65;" and further answered that, upon its information and belief, the above sum "was a part of the income of the Eastern Railroad Company, earned and acquired after the first day of September, A. D. 1876."

In the Superior Court, judgment was ordered for the plaintiff the trustee was charged on its answer and appealed to this court.

*J. L. Stackpole*, for the plaintiff.

*R. Olney*, for the trustee.

SOULE, J. The funds in the hands of the alleged trustee are a part of the income of the Eastern Railroad Company, earned after September 1, 1876, at which date the mortgage authorized by St. 1876, *c.* 236, took effect. The claim on which the plaintiff's suit is founded is for damage done to her property by the railroad company in negligently running a train at a highway crossing, after September 1, 1876, and before any breach of the condition of the mortgage. The claim, when paid, would be properly included in the " operating expenses " of the railroad corporation, within the meaning of that term in the statute. The only question to be decided, therefore, is whether the mortgage so changes the relation of the corporation to its earnings that they cannot be effectively attached on trustee process.

The mortgage, which is drawn in conformity to the statute, purports to convey, in addition to the real estate and chattels of the corporation, " all the rights, privileges, franchises, tolls, revenues, income, leases, contracts and choses in action now belonging to said corporation, or to which it may be in any way entitled; also all the like property and estate, real and personal, rights, privileges, franchises, tolls, revenues, incomes, leases, contracts and choses in action which may be by said corporation hereafter acquired; " upon the condition, among other things, " that, until default in the payment of the principal or interest of said mortgage certificates of indebtedness, or in the performance of the other obligations of said corporation secured by said mortgage, said corporation may remain in the actual management, use and control of the mortgaged premises and property," and the further condition that, in case of default in such payment or performance, " such default continuing for six months, said trustees may, and, if such default continues for twelve months, shall, at the request of one tenth part in amount of the holders of the mortgage certificates of indebtedness then outstanding, enter upon and take possession of all the mortgaged premises, and shall hold and manage the same, and proceed to the foreclosure of this mortgage in the manner in said act provided, but without prejudice to the right of said trustees, or the bondholders or other parties secured under this mortgage, to any other remedies reserved to them under said act." Neither the mortgage nor the statute makes any provision for disposing of

the gross income of the corporation while it retains the actual use, management and control of the property, except what is implied in the permission to the corporation to retain the use; but the thirteenth and fourteenth sections of the statute give authority for applying the net earnings over and above operating expenses to purposes therein specified.

Without deciding what effect the part of the statute last referred to would have in case an attempt should be made to attach by trustee process the income in a suit on a claim which existed before the mortgage was made, we are of opinion that so long as the corporation remains in the use, management and control of the property, or, in other words, until the mortgagees enter and take possession, the income of the road remains so far the property of the corporation as to be liable to attachment by trustee process founded on claims arising out of the operation of the road since the first day of September, 1876. This mortgage does not create any new and extraordinary relations between the parties to it. As between them, it is a mere mortgage, not affected by the fact that the mortgagees are trustees for creditors, instead of holders of the security in their own behalf. It is conceded by the alleged trustee that, if this is so, the mortgagor has the ownership and control of the income of the property so long as it retains possession; being liable not for rents and profits, but only for interest. And this is in accordance with the well established law. *Mayo* v. *Fletcher*, 14 Pick. 525, 531.

The mortgagees are entitled to oust the corporation of its use and control of the property, only at the request of one tenth part in amount of the holders of claims secured under it, after a default by the corporation, in payments or other performances of contract required by the mortgage, has existed for a period of at least six months. Till such default, the corporation has the possession, with the accompanying obligation and duty to operate the road for the purposes for which it was built under the charter of the company. This being so, it is a requirement of public policy that parties dealing with the corporation, or injured by it, should have the right not only to sue the party with which they deal, or which has injured them, in the prosecution of its business, but also to secure themselves upon any moneys or chattels, the

proceeds of that dealing and business, by means of the remedies provided for like cases between persons. Accordingly it has been held that trustees, in possession under a mortgage, are liable as common carriers. *Barter* v. *Wheeler*, 49 N. H. 9. *Sprague* v. *Smith*, 29 Vt. 421. And receivers, acting under appointment of court, are equally so liable. *Blumenthal* v. *Brainerd*, 38 Vt. 402. *Paige* v. *Smith*, 99 Mass. 395.

The character and effect of a mortgage, almost identical with that under consideration in the case at bar, was discussed in the case of *Ellis* v. *Boston, Hartford & Erie Railroad*, 107 Mass. 1, and the opinion here expressed is in accord with the decision there, as well as with decisions of the Supreme Court of the United States and of the courts of Maine and Illinois. *Gilman* v. *Illinois & Mississippi Telegraph Co.* 91 U. S. 603. *American Bridge Co.* v. *Heidelbach*, 94 U. S. 798. *Bath* v. *Miller*, 51 Maine, 341; and 53 Maine, 308. *Noyes* v. *Rich*, 52 Maine, 115. *Mississippi Valley & Western Railway* v. *United States Express Co.* 81 Ill. 534. The only cases cited at the argument, in which it was held that the earnings of a railroad, while the corporation is in possession, cannot be reached by trustee process against the corporation, the property being under a mortgage similar to that under consideration here, are *Dunham* v. *Isett*, 15 Iowa, 284, and *Woodman* v. *York & Cumberland Rail road*, 45 Maine, 207. In *Dunham* v. *Isett*, the opinion contains no discussion of the question, but merely a statement of the result reached, citing, as authority for it, *Galena & Chicago Railroad* v. *Menzies*, 26 Ill. 121, which is in fact no authority for the decision, because the moneys, there contended for, were earned after the mortgagees took possession of the road. The case in 45 Maine is controlled by the later decisions in that state, above cited                                                                 *Judgment affirmed.*