The receiver of the defendant insolvent corporation has filed his final account and seeks instructions for the distribution of the balance in his hands. The claimants are (1) wage claimants, (2) the State of New Jersey for franchise tax, (3) the City of Newark for personal property tax, (4) the state for unemployment insurance contributions, (5) the landlord *Page 145 
who asserts a lien under R.S. 2:60-229 et seq., (6) the United States for social security tax. General creditors need not be considered as the fund is insufficient to pay the others in full. In Decorative Utilities Corp. v. National Motors TruckingCorp., 123 N.J. Eq. 48, I found that priorities among the first four classes of claimants were in the order above stated. Where, in this scheme, do the claims of the landlord and the United States fit?
The United States contends that it is entitled to priority under 31 U.S.C.A. 75 § 191, which provides that whenever any person indebted to the United States is insolvent, debts due to the United States shall be first satisfied. Within the meaning of the act, the defendant became insolvent and the right to priority of payment accrued upon the appointment of the receiver. Decker
v. Decker Building Material Co., 118 N.J. Eq. 177. The statute gives no lien to the government. United States v. Oklahoma,261 U.S. 253; 43 S.Ct. 293. "The United States are to be first satisfied but then it must be out of the debtor's estate. If therefore before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his estate to a third person or has mortgaged the same to secure a debt, or if his property has been seized under a fierifacias, the property is divested out of the debtor and cannot be made liable to the United States. A judgment gives to the judgment creditor a lien on the debtor's lands and a preference over all subsequent judgment creditors. But the Act of Congress defeats this preference in favor of the United States."Thelusson v. Smith, 2 Wheat. 396, 426; 4 L.Ed. 271. So the United States was held entitled to be paid first out of the proceeds of the land, despite the judgment lien. In People v.Maclay, 288 U.S. 290; 53 S.Ct. 323, the United States was given priority over franchise taxes due to the State of New York which had become statutory liens before the appointment of the receiver. Under the law of New York, the lien of the tax was superior to any deeds and mortgages subsequently given. UnitedStates v. Knott, 298 U.S. 544; 56 L.Ed. 902, holds that securities deposited by an insurance company with a state treasurer for the protection of persons *Page 146 
insured by the company, constituted a fund in which the United States had preference over the insured. While the deposit of the securities gave rise to "an inchoate general lien for the benefit of those persons who may become entitled to be paid from the proceeds," Mr. Justice Brandeis said, "Such an interest lacks the characteristics of a specific perfected lien which alone bars the priority of the United States."
In Decker v. Decker Building Material Co., supra, Vice-Chancellor Berry gave a debt due the United States priority over a claim of a municipality for personal property taxes, and in Bowes v. United States, 127 N.J. Eq. 132, Vice-Chancellor Egan awarded the claim of the United States preference over inheritance taxes due to the State of New Jersey. Following these cases, there is no difficulty in deciding that the United States must be satisfied in preference to the state or the City of Newark.
Our statute, R.S. 14:14-21, provides that laborers shall have a "lien" for wages, upon the assets of an insolvent corporation. It is not a true lien, however, but only a right to preference in payment out of the funds that come into the hands of the receiver, although it may result in the displacement of certain prior encumbrances such as mechanic's liens. J.W. Pierson Co.
v. West Orange-Verona Building Co., 112 N.J. Eq. 426. The United States must be paid ahead of the wage claimants.
There remains the claim of the landlord. The statute provides: "A rentor," that is, the landlord, "shall be entitled to a lien on machinery and other chattels to the extent of the rentee's interest therein for the amount of unpaid rent, from the date the rent is unpaid. Such lien hereby created shall have priority and be paramount to any title, lien, interest, mortgage, judgment, or other encumbrance created or acquired after machinery or other chattels are placed in the premises. Such priority shall extend only to the amount of unpaid rent for not more than six months."R.S. 2:60-230. Subsequent sections provide for a sale by the landlord of the chattels "free and clear of such liens and encumbrances to which the lien of the rentor is given priority" and for application *Page 147 
of the proceeds first to the rent and then to the subsequent liens and encumbrances, and the balance to the tenant.
It will be observed that the landlord has the lien "from the date the rent is unpaid" but that it is paramount to prior titles and encumbrances acquired after the chattels are placed in the premises. The word "title" should probably be construed so as to exclude absolute titles taken in good faith, in the ordinary course of business, before the landlord takes steps for the sale of the chattels. It is obviously to the benefit of the landlord that his tenant be able to sell his product, whether the rent be in arrears or not, so that he may get the money to pay the rent. But no one would buy from the tenant, if he acquires only a title which is subject to the lien of the landlord. Until the landlord seizes the chattels, or gives notice of intended sale, the tenant is left in full possession and control of the chattels. The right of the landlord meanwhile "lacks the characteristics of a perfected lien which," as Mr. Justice Brandeis said, "alone bars the priority of the United States."
The compensation of the receiver and the administration expenses must be paid first, for had it not been for the work of the receiver, there would have been no fund to distribute.Kennebec Box Co. v. Richards Corp., 5 Fed. Rep. 2d 951.
Then comes the debt due the United States, which will exhaust the fund.
If this estate were being administered in the United States District Court in bankruptcy, the result would be very different, for the Act of Congress which governs in insolvency proceedings, is inoperative to a great extent in the bankruptcy court. Reese
v. United States, 75 Fed. Rep. 2d 9. *Page 148